**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| LAUREN COMBS,<br>on behalf of Plaintiff and a class, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| AANIIIH NAKODA FINANCE, LLC, doing<br>business as Bright Lending;<br>TOTAL MANAGEMENT, INC.,<br>sometimes doing business as<br>Bright Management and TMI Total<br>Management; and BENJAMIN E. GATZKE, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT – CLASS ACTION

1.      Plaintiff Lauren Combs brings this action to secure redress from predatory and unlawful loans (such as Exhibit A) made by Defendants (a) Aaniiih Nakoda Finance, LLC, doing business as Bright Lending (hereinafter "Bright Lending"); (b) Total Management, Inc., sometimes doing business as Bright Management and TMI Total Management; and (c) Benjamin E. Gatzke.

2.      Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 et seq., and the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq. (Count III – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under RICO (Counts IV-VI).

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 18 U.S.C. §1964 (RICO), 28 U.S.C. §1331 (general federal question), and 28 U.S.C. §1367 (supplemental jurisdiction).  Depending on the number of class members and the amount of loans made to them, the Court may also have jurisdiction under 28 U.S.C. §1332(d).

1

4.     This Court has personal jurisdiction over each Defendant because they knowingly participated in the making of unlawful loans to Illinois residents.

5.     Venue is proper because the loans were made to a resident of Winnebago County.

## PARTIES

### Plaintiff

6.     Plaintiff Lauren Combs is a resident of Winnebago County, Illinois.

### Defendants

7.     Defendant Aaniiih Nakoda Finance, LLC d/b/a Bright Lending is an online payday lender that offers loans to consumers at annual percentage rates above 500%. It purports to be an entity formed under the laws of the Fort Belknap Indian Community of the Fort Belknap Reservation of Montana ("Fort Belknap Tribe"), a federally-recognized Indian Tribe. Bright Lending claims to be wholly-owned by the Tribe. (Exhibit A, p. 1) It uses the address 353 Old Hays Road, Hays, MT 59527. It also uses P.O. Box 578, Hays, MT 39327.

8.     Based on this purported ownership, Bright Lending claims it is a "tribal lending entity" and therefore is entitled to invoke tribal sovereign immunity.

9.     In fact, the Tribe has no substantive involvement in the operation of Bright Lending.

10.     As described below, the principal economic benefit of the activities of "Bright Lending" is received by non-Native American persons.

11.     "Bright Lending" does business in Illinois over the Internet, via text message, via Automated Clearing House transactions, and over the telephone.

12.     The actual operator of Bright Lending is Defendant Total Management, Inc., located at 1845 Shelby Ln., Fayetteville, AR 72704.

13.     Total Management, Inc., is responsible for the tasks necessary to run an online lending enterprise, including obtaining information about prospective borrowers and determination of whether to make loans.

14.     Total Management, Inc., is a corporation chartered under the laws of Texas. On

2

information and belief, it has zero Native American ownership.

15.     Total Management, Inc., sometimes does business as Bright Management and TMI Total Management.

16.     Domain name registration records show that the website used to conduct the lending activities at issue, BrightLending.com, was registered to Ben Gatzke, Total Management, Inc., 1845 Shelby Ln., Fayetteville, AR 72704.  (Exhibits B-C)

17.     Defendant Benjamin E. Gatzke is or holds himself out as the president of Total Management, Inc.  As such, he controls its policies and practices, including the rates of interest on the loans at issue and the decision to engage in a "rent-a-tribe" scheme.

18.     Defendant Benjamin E. Gatzke is also the registered agent of Total Management, Inc.

19.     Defendant Gatzke may be found at 6445 Harris Pkwy., Fort Worth, TX 76132 or 1845 Shelby Lane, Fayetteville, AR 73704-5265.

## FACTS RELATING TO PLAINTIFF

20.     On or about June 17, 2021, "Bright Lending" made a loan to Plaintiff via Internet in the amount of $650 at a disclosed annual percentage rate of 699.9926% (Exhibit A).

21.     Exhibit A is a standard form loan agreement used by "Bright Lending" on a regular basis.

22.     Defendants regularly make loans to individuals in Illinois at such rates.

23.     The loan was obtained for personal, family or household purposes and not for business purposes.

24.     At no time have Defendants had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling them to make loans to Illinois residents at more than 9% interest.

25.     Defendants nevertheless advertise and make loans to Illinois residents at rates greatly exceeding 9%.

3

26. Defendants sought out Illinois residents for such loans.

27. The "Bright Lending" website lists states in which Defendants will not make loans. Illinois is not one of these states. (Exhibit D)

28. Plaintiff has made payments on the loan.

29. Defendants claim amounts are still owed on the loan.

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

30. Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 et seq. "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

31. Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

32. Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

33. Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null

4

and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

34.     Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

35.     Illinois has a criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony.  720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 et seq).  It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State."  720 ILCS 5/1-5.

36.     Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005).  Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates.  *Madden v. Midland Funding, LLC,* 11cv8149, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

37.     The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois.  *E.g., In the Matter of  Red Leaf Ventures, LLC,* No. 12 CC 569 (https://www.idfpr.com/dfi/ccd/Discipline/RedLeafVenturesCDOrder12CC569.pdf), *In the Matter of  Money Mutual, LLC*, No. 12 CC 408 (https://www.idfpr.com/dfi/ccd/Discipline/MoneyMutualCDOrder12CC408.pdf); *In the Matter of  Hammock Credit Services*, No. 12 CC 581 (https://www.idfpr.com/dfi/ccd/Discipline/HammockCreditCDOrder12CC581.pdf); *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133  (https://www.idfpr.com/dfi/

CCD/Discipline/17CC133%20-%20Make%20Cents%20dba%20Maxlend%20Cease%20and%20De
sist%20Order%20Bob%208%2016%202017.pdf)

**RENT-A-TRIBE SCHEMES**

38.     In an attempt to evade prosecution under usury laws of states like Illinois,  non-tribal
owners of online payday lending businesses frequently engage in a business model commonly
referred to as a "rent-a-tribe" scheme.

39.      In such schemes, non-tribal payday lenders create an elaborate charade claiming
their non-tribal businesses are owned and operated by Native American tribes.

40.     The illegal payday loans are then made in the name of a Native American tribal
business entity which purport to be shielded from state and federal laws prohibiting usury due to
tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending
scheme; all substantive aspects of the payday lending operation – funding, marketing, loan
origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed
by individuals and entities that are unaffiliated with the tribe.

41.     In exchange for use of the tribe's name, the beneficial owner of the payday lending
scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies
from scheme-to-scheme, the number is almost always in the single digits.

42.     However, an entity must function as a legitimate "arm of the tribe" in order to fall
under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino &
Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

43.     To determine if a particular entity is entitled to sovereign immunity, the  majority of
courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities']
method of creation; (2) their purpose; (3) their structure, ownership, and management, including the
amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to
have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and
(6) whether the purposes of tribal sovereign immunity are served by granting immunity to the

entities." *Breakthrough* at 1183, 1187-88.

44.     These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

45.     Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

46.     Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

47.     Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.,* No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## COUNT I - DECLARATORY AND INJUNCTIVE
## RELIEF AGAINST ILLEGAL CONDUCT

48.     Plaintiff incorporates paragraphs 1-47.

49.     This claim is against all Defendants.

50.     There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiffs must repay the loans made to them.

7

51. Declaratory relief will resolve such controversy.

52. An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

53. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(2).

54. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "Bright Lending" at more than 9% interest (c) which loan has not been paid in full.

55. Plaintiff may alter the class definition to conform to developments in the case and discovery.

56. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

57. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

58. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

59. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

60. Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

61. The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of

all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i.      Injunctive relief;

ii.     Declaratory relief;

iii.    Restitution of all amounts collected on the loans from members of the class;

iv.    Costs of suit; and

v.     Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

62.     Plaintiff incorporates paragraphs 1-47.

63.     This claim is against all Defendants.

64.     Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

65.     Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

66.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

67.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "Bright Lending" at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

68.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

69.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there

9

are at least 40 class members.

70.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

71.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

72.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

73.     A class action is superior for the fair and efficient adjudication of this matter, in that:

     a.     Individual actions are not economically feasible.

     b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

     i.     Damages as provided in 815 ILCS 205/6.

     ii.     Attorney's fees, litigation expenses and costs of suit; and

     iii.     Such other and further relief as the Court deems proper.

### COUNT III  – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

74.     Plaintiff incorporates paragraphs 1-47.

75.     This claim is against all Defendants.

76.     Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

77.     Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq.

10

## CLASS ALLEGATIONS

78.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

79.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "Bright Lending" at more than 9% interest (c) which loan was made on or after a date 3 years prior to the filing of suit.

80.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

81.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

82.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

83.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

84.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

85.     A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.     Individual actions are not economically feasible.

    b.     Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.     Compensatory damages;

        ii.     Punitive damages;

11

iii.     Attorney's fees, litigation expenses and costs of suit; and

iv.     Such other and further relief as the Court deems proper.

## COUNT IV – RICO

86.     Plaintiff incorporates paragraphs 1-47.

87.     This claim is against Gatzke and Total Management, Inc., who are the RICO "persons."

88.     All loans made in the name of "Bright Lending" to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate (699.9926%, in the case of Plaintiff, and similar rates, in the case of the class members) is at least twice the enforceable rate (9%).

89.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

90.     "Bright Lending" is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

91.     Defendant Gatzke is associated with this enterprise.  Gatzke is president of Total Management, Inc., through which he directs and supervises the making of loans to Illinois residents.

92.     Defendant Total Management, Inc., is also associated with this enterprise.  Total Management, Inc., directs and supervises the making of loans to Illinois residents.

93.     Defendants Gatzke and Total Management, Inc., conducted or participated in the conduct of the affairs of "Bright Lending" through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

94.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

95.     Plaintiff brings this claim on behalf of a class.

96.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "Bright Lending" at more than 9% interest (c) which loan was made on or after

12

a date 4 years prior to the filing of suit.

97.     The class is so numerous that joinder of all members is not practicable.   On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

98.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

      a.      Whether the loans at issue are "unlawful debts" as defined in RICO.

      b.      Whether "Bright Lending" is an "enterprise."

      c.      Whether Defendants are associated with "Bright Lending".

      d.      Whether Defendants conducted or participated in the affairs of "Bright Lending" through a pattern of making and collecting unlawful loans.

99.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

100.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

101.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.      Individual actions are not economically feasible.

      b.      Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.      Treble damages;

      ii.      Attorney's fees, litigation expenses and costs of suit; and

      iii.      Such other or further relief as the Court deems proper.

## COUNT V – RICO

102.     Plaintiff incorporates paragraphs 1-47.

13

103.     This claim is against Gatzke, who is the RICO "person."

104.     All loans made in the name of "Bright Lending", LLC to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate (699.9926%, in the case of Plaintiff, and similar rates, in the case of the class members) is at least twice the enforceable rate (9%).

105.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

106.     "Bright Lending" and Total Management, Inc., constitute an association in fact enterprise, existing for the purpose of making high-interest loans.

107.     The association in fact enterprise affects interstate commerce, in that it has physical locations outside of Illinois and makes loans to Illinois residents via the Internet.

108.     Defendant Gatzke is associated with the enterprise, in that he directs and controls its lending activities.

109.     Defendant Gatzke conducted or participated in the conduct of the affairs of the association in fact enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

110.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

111.     Plaintiff brings this claim on behalf of a class.

112.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "Bright Lending" at more than 9% interest (c) which loan was made on or after a date 4 years prior to the filing of suit.

113.     The class is so numerous that joinder of all members is not practicable.   On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

114.     There are questions of law and fact common to the class members, which

14

common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a.    Whether the loans at issue are "unlawful debts" as defined in RICO.

    b.    Whether "Bright Lending" and Total Management, Inc., constitute an association in fact "enterprise."

    c.    Whether Defendant is associated with the enterprise.

    d.    Whether Defendant conducted or participated in the affairs of the enterprise through a pattern of making and collecting unlawful loans.

115.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

116.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

117.    A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible.

    b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

    i.    Treble damages;

    ii.    Attorney's fees, litigation expenses and costs of suit; and

    iii.    Such other or further relief as the Court deems proper.

### COUNT VI – RICO

118.    Plaintiff incorporates paragraphs 1-47.

119.    This claim is against Gatzke, who is the RICO "person."

120.    All loans made in the name of "Bright Lending", LLC to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate

15

usurious under Illinois law, where (c) the usurious rate (699.9926%, in the case of Plaintiff, and similar rates, in the case of the class members) is at least twice the enforceable rate (9%).

121.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

122.     Total Management, Inc., is an enterprise, in that it is duly organized corporation.

123.     The enterprise affects interstate commerce, in that it has physical locations outside of Illinois and directs the making of loans to Illinois residents via the Internet.

124.     Defendant Gatzke is associated with the enterprise, in that he is president and directs and controls its lending activities.

125.     Defendant Gatzke conducted or participated in the conduct of the affairs of the enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

126.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

127.     Plaintiff brings this claim on behalf of a class.

128.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of "Bright Lending" at more than 9% interest (c) which loan was made on or after a date 4 years prior to the filing of suit.

129.     The class is so numerous that joinder of all members is not practicable.   On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

130.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

        a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

        b.     Whether  Total Management, Inc., is an "enterprise."

        c.     Whether Defendant is associated with the enterprise.

       d.     Whether Defendant conducted or participated in the affairs of the enterprise through a pattern of making and collecting unlawful loans.

131.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

132.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

133.    A class action is superior for the fair and efficient adjudication of this matter, in that:

       a.     Individual actions are not economically feasible.

       b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

       i.     Treble damages;

       ii.     Attorney's fees, litigation expenses and costs of suit; and

       iii.     Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6297473)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## **JURY DEMAND**

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

## <u>LIST OF EXHIBITS</u>

A      Ms. Combs' loan agreement
B      Domain registration for brightlending.com, October 16, 2017
C      Domain registration for brightlending.com, Jan. 18, 2018
D      Excerpt from Bright Lending website